**PEOPLES NATIONAL BANK, a national banking association, Plaintiff,**

**v.**

**The OFFICE OF THE COMPTROLLER OF THE CURRENCY OF THE UNITED STATES, and John D. Hawke, Jr., Comptroller of the Currency, Defendants.**

No. 3:02–CV–8.

United States District Court, E.D. Texas, Paris Division.

Oct. 8, 2002.

Mark Craig Frels, Mark H. How, Bruce A. Heitz, Short How Frels & Heitz, Dallas, TX, for plaintiff.

Matthew D. Orwig, Beaumont, TX, Yvette Rivera, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

In this action, Peoples National Bank ("PNB") seeks injunctive and declaratory relief against the Office of the Comptroller of the Currency of the United States ("OCC") and John D. Hawke, Jr. ("Hawke"), Comptroller of the Currency (collectively "Defendants"), alleging that Defendants have violated 12 U.S.C. § 4806 and PNB's constitutional right to due process by not allowing PNB to appeal an "examination rating" to the OCC Ombudsman. Defendants have filed a Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction (Docket No.11). Having considered the parties' submissions, the court **GRANTS** Defendants' motion and dismisses this action for the reasons that follow.

## BACKGROUND

PNB is a national bank organized under the laws of the United States with its main office in Paris, Texas. The OCC is an agency of the Department of the Treasury with primary supervisory responsibility over national banks. On February 24, 2001, PNB began making small, short-term consumer loans, which are sometimes referred to as "payday loans" (hereinafter referred to as "payday loans"). PNB entered into Marketing and Servicing Agreements with various subsidiaries of Advance America, Cash Advance Centers, Inc. (collectively "Advance America") under which Advance America, acting as an agent for PNB, markets and services payday loans. In April 2001, the OCC commenced a regularly scheduled examination of PNB. During the course of its examination, the OCC investigated PNB's practice of making payday loans. Ultimately, on February 19, 2002, the OCC notified PNB that its examination rating would be unsatisfac-

tory due to its practice of engaging in payday loan transactions. The next day, PNB informed the OCC Ombudsman that the bank intended to appeal the examination rating based on procedures set forth in Banking Bulletin 96–18 ("BB 96–18").

On February 25, 2002, the OCC issued Banking Bulletin 2002–9 ("BB 2002–9").[1] Thereafter, the Ombudsman informed PNB that its intended appeal was precluded by BB 2000–9. On March 18, 2002, the OCC issued to PNB a Notice of Charges for an Order to Cease and Desist under 12 U.S.C. § 1818(b), alleging unsafe or unsound practices and violations of law and regulation mostly relating to the PNB's entry into the payday loan business. On March 18, 2002, PNB filed this suit contending that the OCC and Hawke deprived PNB of a certain appeal right with the OCC's Ombudsman under 12 U.S.C. § 4806 by implementing BB 2002–9. On April 5, 2002, PNB responded to the Notice, denying essentially all of the OCC's charges.

By way of the instant motion, Defendants specifically contend (1) that PNB lacks standing to maintain this lawsuit; (2) that the complaint fails to state a claim upon which relief may be granted; and (3) that 12 U.S.C. § 1818(i) precludes this court from exercising jurisdiction over this action. As the Court finds that the district courts have been divested of jurisdiction over matters such as this one pursuant to 12 U.S.C. § 1818(i), the Court does not reach Defendants' other arguments.

## STANDARD APPLICABLE TO 12(b)(1) MOTION TO DISMISS

Fed.R.Civ.P. 12(b)(1) authorizes the dismissal of a case for lack of subject matter jurisdiction when the district court lacks the statutory and constitutional power to adjudicate the case. *See Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A motion to dismiss pursuant to Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *See id.* A district court may dismiss a case for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *See Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)). After the defendant challenges jurisdiction by filing a motion to dismiss under Rule 12(b)(1), the plaintiff has the burden of establishing the existence of subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980). A motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of her claims that would entitle her to relief. *See Home Builders Ass'n of Mississippi, Inc.*, 143 F.3d at 1010.

---

1. BB 2002–9 differs from BB 96–18 in that it clarifies that "enforcement related decisions" include "the underlying facts that form the basis of some recommended or pending formal enforcement actions, the acts or practices that are the subject of a pending formal enforcement action and OCC determinations regarding compliance with an existing formal enforcement action." While the OCC's policy does not allow appeals of the underlying facts of an enforcement action, it permits appeals of supervisory determinations, including examination ratings, to be appealed, even when a enforcement action has been taken. During the appellate process, the OCC's Ombudsman, without engaging in additional fact-finding, applies relevant OCC policies and standards to the existing facts to determine if the examination's conclusions are consistent with those policies and standards.

## JURISDICTION

Applying the foregoing principles to the complaint here, at paragraph 2, PNB avers that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337(a), under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702–704 and 706(2). In further support of its claim of federal question jurisdiction, plaintiff cites *First National Bank of Chicago v. Steinbrink*, 812 F.Supp. 849, 854 (N.D.Ill.1993), arguing that the OCC has engaged in unlawful actions under circumstances where no adequate alternative judicial remedy exists for PNB. Each basis for jurisdiction will be discussed in turn.

### 12 U.S.C. § 1818

The statutory scheme set out in the Financial Institutions Supervisory Act ("FISA") (as amended by Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA")), grants federal agencies such as the Office of the Comptroller of Currency, the Federal Deposit Insurance Corporation, and the Federal Reserve Board wide-ranging supervision and enforcement authority over our national banking system. *See Luethe v. Office of Financial Institution Adjudication*, 977 F.Supp. 357, 360 (E.D.Pa.1997); *First National Bank of Scotia v. United States*, 530 F.Supp. 162, 166 (D.D.C.1982); 12 U.S.C. § 1813(q). Section 1818 applies to banks insured through the Federal Deposit Insurance Corporation and authorizes the appropriate regulatory agency (if it believes that an insured depository institution is engaged, has engaged or is about to engage in an unsafe or unsound banking practice, has violated any law or is about to do so) to deliver to an insured bank notice of charges and/or a cease and desist order. 12 U.S.C. § 1818(b).

Under Section 1818(h), hearings are conducted in accordance with the provision of chapter 5 of Title 5 (the Administrative Procedures Act) and,

> After such hearing, and within ninety days after the appropriate Federal banking agency or Board of Governors of the Federal Reserve System has notified the parties that the case has been submitted to it for final decision, it shall render its decision ... and shall issue and serve upon each party to the proceeding an order or orders consistent with the provisions of this section. *Judicial review of any such order shall be exclusively as provided in this subsection (h) of this section. Unless a petition for review is timely filed in a court of appeals of the United States, as hereinafter provided* .... and thereafter until the record in the proceeding has been filed as so provided, the issuing agency may at any time, upon such notice and in such matter as it shall deem proper, modify, terminate or set aside any such order. Upon such filing of the record the agency may modify, terminate or set aside any such order with permission of the court.

12 U.S.C. § 1818(h)(1) (emphasis added).

Pursuant to section 1818(h)(2),

> upon a party's filing of a petition for review in the court of appeals of the United States for the circuit in which the home office of the depository institution is located or in the U.S. Court of Appeals for the District of Columbia Circuit, the Court of Appeals 'shall have jurisdiction, which upon the filing of the petition of the record shall, except as provided in the last sentence of said paragraph. (1) be *exclusive* to affirm, modify, terminate or set aside in whole or in part the order of the agency. The judgment and decree of the court shall be final, except that the same shall be

subject to review by the Supreme Court upon certiorari, as provided in Section 1254 of Title 28.

12 U.S.C. § 1818(h)(2) (emphasis added).

Finally, Section 1818(i)(1) provides that: The appropriate Federal banking agency may in its discretion apply to the United States district court, or the United States court of any territory, within the jurisdiction of which the home office of the depository institution is located, for the enforcement of any effective and outstanding notice or order issued under this section .... and such courts shall have jurisdiction and power to order and require compliance herewith; but, except as otherwise provided in this section ... *no court shall have jurisdiction to affect by injunction or **otherwise** the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate or set aside any such notice or order.*

12 U.S.C. § 1818(i)(1) (emphasis added).

It is clear that section 1818 as a whole provides a detailed framework for regulatory enforcement and for orderly review of the various stages of enforcement. *Board of Governors, Federal Reserve System v. DLG Financial Corp.,* 29 F.3d 993, 999 (5th Cir.1994), *cert. dis.,* 513 U.S. 1140, 115 S.Ct. 1085, 130 L.Ed.2d 1055 (1995); *Groos National Bank v. Comptroller of the Currency,* 573 F.2d 889, 895 (5th Cir.1978).

■ The procedure outlined above in 12 U.S.C. § 1818(h)(2) places judicial review of agency cease and desist orders firmly in the hands of the United States Circuit Court of Appeals. At the same time, however, Congress has provided the federal district courts with limited jurisdiction over three types of controversies stemming from the issuance of cease and desist orders: (1) to enjoin interim agency orders pending completion of administrative proceedings; (2) to issue an injunction designed to enforce the terms of temporary cease and desist orders; and (3) to enforce an effective and outstanding agency notice or order. *See Board of Governors of Federal Reserve System v. MCorp Financial Inc.,* 502 U.S. 32, 38, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991) ("tripartite regime of judicial review"). None of these bases for jurisdiction are applicable in this case. Aside from these three exceptions, Congress has categorically determined that "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate or set aside any such notice or order." 12 U.S.C. § 1818(i)(1).

■ PNB seeks an injunction compelling the OCC Ombudsman to allow an appeal by PNB of the Examination Report rating in a fair and impartial manner in accordance with the requirements and procedures set forth in BB 96–18 and 12 U.S.C. § 4806 and enjoining Hawke from communicating and/or interfering with the Ombudsman about any matter related to the appeal of the Examination Report rating during its pendency, and a declaratory judgment that BB 2002–9 is unconstitutional, null and void and violates the express provisions of 12 U.S.C. § 4806.

Thus, essentially PNB is attempting to obtain review of the OCC's proposed enforcement action while the OCC is pursuing it. The Notice of Charges that initiated the enforcement action and the Bank's unsatisfactory rating are based on the same set of facts—PNB's alleged unsafe and unsound practices in its payday loan business. Review of these facts would interfere with the administrative enforcement proceeding. Indeed, 12 U.S.C. § 4806(g) makes clear that "[n]othing in this section shall affect the authority of an

appropriate Federal banking agency ... to take enforcement or supervisory action."

The court believes that exercising jurisdiction over this controversy would be unwarranted in light of the carefully crafted scheme of exclusive appellate review established by 12 U.S.C. §§ 1818(h)(2), (i). Regardless of how PNB chooses to style its complaint, it is essentially asking this court to accomplish exactly what the statute prohibits by reviewing, setting aside, modifying, and/or enjoining the enforcement of the Comptroller's order. Whether the procedures utilized comport with constitutional and statutory requirements, are questions to be decided, if at all, by the Court of Appeals for the Fifth Circuit as it exercises its power of review under 12 U.S.C. § 1818(h)(2).

### 28 U.S.C. § 1331

■■■ PNB contends that this court has jurisdiction pursuant to 28 U.S.C. § 1331. Federal courts are courts of limited jurisdiction and, thus, a plaintiff may invoke federal court jurisdiction only pursuant to a statutory grant of authority to adjudicate the asserted claim. *See Leuthe*, 977 F.Supp. at 361 (citations omitted). When a plaintiff sues the United States or any instrumentality thereof, it may not rely on the general federal question jurisdiction of 28 U.S.C. § 1331, but must specify a statutory provision that waives the government's sovereign immunity from suit. *Id.* Moreover, it well established that Congress may provide whatever procedure that it deems appropriate for judicial review of administrative orders. *Massieu v. Reno*, 91 F.3d 416, 419 (3rd Cir.1996). With regard to section 1818, it is clear, that Congress intended to provide the OCC with the authority to initiate and

pursue enforcement actions, and to fashion appropriate remedies without district court interference. *See, e.g., MCorp*, 502 U.S. at 42, 112 S.Ct. 459 ("the specific preclusive language in 12 U.S.C. § 1818(i)(1) (1988 ed. Supp. I) is not qualified or superseded by the general provisions governing bankruptcy proceedings on which Mcorp relies.").

### APA and Declaratory Judgment Act

■■■ PNB also contends that jurisdiction is this case is controlled under the APA by 5 U.S.C. § 706. The court is not persuaded. The APA grants a right of judicial review of an agency action to "[a] person suffering legal wrong because of any agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. This right of review is limited. First, the APA only provides for review of those actions "made reviewable by statue and final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704. Second, the APA withdraws the right of review "to the extent that statutes preclude judicial review." 5 U.S.C. § 701(a)(1). District court review is expressly barred by 12 U.S.C. § 1818(i)(1) and jurisdiction is therefore withdrawn pursuant to 5 U.S.C. § 701(a)(1). Moreover, there has been no "final agency action" that could be subject to judicial review under the APA. The OCC has not issued a decision, order, or taken any other action against PNB that is subject to judicial review at this point.[2]

■■■ Neither the APA nor the Declaratory Judgment Act grant this court jurisdiction over this matter. The APA and

---

**2.** It should be noted that the APA will not confer jurisdiction on the district court where another statute denies it and the Declaratory Judgment Act does not confer jurisdiction where none otherwise exists. *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 512 (10th Cir.1994).

the Declaratory Judgment Act were not designed to expand the jurisdictional foundations of the federal courts, but rather, to provide additional remedies and procedures where jurisdiction has already been conferred by statute. *See First National Bank of Scotia v. United States,* 530 F.Supp. 162, 168 n. 5 (D.D.C.1982) (citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)); *Estate of Watson v. Blumenthal,* 586 F.2d 925 (2d Cir.1978). Section 702 of the APA expressly states "[n]othing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."

### Judicially–Created Exception

PNB's final ground for subject matter jurisdiction lies in its interpretation of the judicially-created exception to section 1818(i) withdrawal statute. For this proposition PNB cites *First National Bank of Chicago v. Steinbrink,* 812 F.Supp. 849, 854 (N.D.Ill.1993). Section 1818(i) "evinces a clear intention that this regulatory process is not be disturbed by untimely judicial intervention, [unless] there is [a] 'clear departure from statutory authority.' " *Groos Nat'l Bank v. Comptroller,* 573 F.2d 889, 895 (5th Cir.1978) (citations omitted); *Federal Deposit Ins. Corp. v. Bank of Coushatta,* 930 F.2d 1122, 1126 (5th Cir.1991). The "statutory authority" exception to normal exhaustion of administrative remedies is a "narrow anomaly reserved for extreme situations." *Shawnee Coal Co. v. Andrus,* 661 F.2d 1083, 1093 (6th Cir.1981). This court cannot exercise jurisdiction under the "statutory exception" to section 1818(i). PNB has failed to allege sufficient facts indicating that the

OCC acted "in excess of its delegated powers contrary to a specific prohibition in the Act." *First Nat'l Bank v. C.T. Conover,* 715 F.2d 234 (6th Cir.1983).

### CONCLUSION

Accordingly, Defendants' Motion to Dismiss is **GRANTED.**

**IT IS SO ORDERED.**